**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PAULETTE GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 05cv1344 |
| | ) | |
| THE AVELLA AREA SCHOOL DISTRICT, | ) | |
| THE AVELLA AREA SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, & MICHAEL | ) | |
| YANOSKO, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

January 24, 2008

Presently before the Court for disposition is the MOTION FOR SUMMARY

JUDGMENT, with brief in support, filed by Defendants, The Avella Area School District, The

Avella Area School District Board of Education, and Michael Yanosko (*Document Nos. 25 and

27,* respectively), and the brief and response in opposition filed by Plaintiff, Paulette Graham

(*Documents No. 33 and 34*).

The issues have been fully briefed and the matter is ripe for disposition. After a

careful consideration of the motion, the filings in support and opposition thereto, the

memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that

there are genuine issues of material fact which remain as to Plaintiff's § 1983 sex /gender

harassment and hostile work environment claims. However, the Court finds that there is not

sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff on

her federal claims brought under 42 U.S.C. § 1985(3) and 1986 and her state law claim for

defamation. Accordingly, the motion for summary judgment will be granted in part and denied in part.

<span style="font-variant: small-caps;">Procedural Background</span>

Plaintiff, Paulette Graham ("Plaintiff") brought this lawsuit on September 27, 2005, by the filing of a five-count Complaint against her former employer, the Avella Area School District ("School District"), the Avella Area School District Board of Education ("Board of Education"), and school board member Michael Yanosko ("Defendant Yanosko"). Plaintiff alleges that she was discriminated against based on her gender and age and that Defendants retaliated against her when she made complaints of such alleged discrimination, which ultimately led to her constructive discharge. Plaintiff also alleges that Defendant Yanosko defamed her by publicly commenting on her alleged incompetency, her alleged misuse or theft of School District funds, and an alleged sexual affair that Plaintiff had with another District Administrator, High School Principal Daniel Cecchini.

Plaintiff brought her claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, 42 U.S.C. §§ 1983, 1985, and 1986; the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. § 951, *et seq*., and under Pennsylvania state law for defamation.

By Order of Court dated June 14, 2006, the Court granted the Defendants' Motion to Dismiss and Plaintiff's claims under Title VII, the ADEA, and the PHRA were dismissed with prejudice for failure to timely exhaust administrative remedies. Presently remaining are Plaintiff's claims against all Defendants under 42 U.S.C. § 1983, 1985 and 1986, and Plaintiff's state law claim for defamation against Defendant Yanosko.

Defendants have filed the instant motion for summary judgment in which they contend that they are entitled to judgment as a matter of law because Plaintiff is unable to establish (i) a *prima facie* case of sex/gender harassment and hostile work environment under Section 1983,[1] (iii) a *prima facie* case of age discrimination,[2] (iv) a *prima facie* case of conspiracy under Section 1985, (v) a *prima facie* case of aiding a conspiracy under Section 1986, and (vi) a *prima facie* case of defamation.

## BACKGROUND

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff.

Plaintiff Paulette Graham ("Plaintiff") was hired as Superintendent of the School District on October 11, 2000. Plaintiff agreed to a five (5) year employment contract, which commenced November 1, 2000 and was scheduled to end on June 30, 2005. Prior to being hired by the School District, Plaintiff was the principal at Washington Park Elementary School for approximately nine (9) years.

---

[1]    From a reading of the Complaint, it appears that Plaintiff has also raised a First Amendment retaliation claim under 42 U.S.C. § 1983. *See* Paragraph 19 of the Complaint ("Defendants . . . intentionally created a hostile work environment and intentionally harassed her and discriminated against Plaintiff because of her sex /gender, age, and in retaliation for her complaining about the unlawful treatment." (emphasis added). Defendants, however, have not addressed this claim in their summary judgment brief and, thus, the claim remains viable.

[2]    Plaintiff has represented to the Court that she "concedes that her age claims were disposed of when the Court granted defendants' motion to dismiss her ADEA claims" because unlike gender discrimination claims, "age claims cannot be pursued under the Equal Protection Clause of the 14th Amendment and its statutory progeny, 42 U.S.C. § 1983." Pl's Br. at 8, n.1. *See Purtill v. Harris*, 658 F.2d 134 (3d Cir. 1981), *cert. denied, sub. nom.*, *Purtill v. Heckler*, 426 U.S. 1131 (1983).

3

As Superintendent, Plaintiff understood that she was the only administrator with a direct line of responsibility from the School Board to the teaching staff of the School District. The Business Manager, principals, and other administrative staff reported directly to her.

During Plaintiff's tenure as Superintendent of the School District, three (3) people served as president of the School Board, *to wit*:  Joann Yukevich, president when Plaintiff was hired through November 2001; Nick Cecchini, from December 2001 through the end of November, 2002; Defendant Yanosko from December 2002 through the end of November, 2003; and Joann Yukevich from December, 2003 through November, 2004.

Plaintiff alleges that Defendant Yanosko was adamantly opposed to hiring a woman to fill the job of Superintendent for School District.  According to Plaintiff, because of this bias, Defendant Yanosko subjected her to continuous gender harassment, discriminatory retaliation, and a hostile work environment.

Plaintiff alleges that during Defendant Yanosko's tenure as School Board President, his campaign against her escalated.  He forbade her from calling any other School Board members and would not allow her to place items on the agenda unless he first approved it. Plaintiff additionally alleges that Defendant Yanosko was critical of her performance and that he openly expressed that criticism at public meetings of the School Board.  According to Plaintiff, Defendant Yanosko's criticisms were not restricted to matters of School District business or governance or other matters of public concern, but rather many times these criticisms were of matters personal in nature.  Plaintiff further alleges that Defendant Yanosko would not let Plaintiff express her ideas or address questions posed at the School Board meetings.  Instead, he would "shush" her and cut her off when she attempted to speak.

4

In October of 2003, Defendant Yanosko confronted Plaintiff while in a rage over various school district issues. Plaintiff alleges that she was so fearful and intimidated that thereafter when she was leaving late meetings, either of the School Board or of its committees, she would always make sure someone escorted her to her car.

Plaintiff also contends that Defendant Yanosko was demanding, abrasive, and raised his voice towards certain men if they defended her actions, namely Principal Daniel Cecchini, Business Manager Eric Brandenburg, and Solicitor Lee Price. However, according to Plaintiff, Defendant Yanosko would later apologize to these men, but he never apologized to her.

During her tenure as Superintendent, Plaintiff would typically meet with High School Principal Daniel Cecchini weekly, for two to three hours, and at any other time when there was a problem. Several members of the school community, including faculty, staff, and community members, began to speculate about whether Plaintiff and Principal Cecchini were engaged in a romantic relationship. Plaintiff alleges that these speculations arose because Defendant Yanosko stated at a public School Board meeting in June 2003 that Plaintiff and Principal Cecchini were having an affair.

Plaintiff alleges that the harassment she experienced increased in 2003 when two (2) new School Board members who were opposed to Plaintiff were elected, Roy Miller and Tim Yilit. According to Plaintiff, with the addition of these two new School Board members, a large group of people, mainly family and friends of Defendant Yanosko and Roy Miller, came the School Board meetings to harass her. At these meetings, Board members and/or school parents would sometimes clap or cheer when Defendant Yanosko made statements which were

critical of Plaintiff's performance. Security guards were eventually brought in to attend the School Board meetings to prevent the various attendees from getting too boisterous.

It is undisputed that during Plaintiff's tenure as Superintendent at least two (2) controversies arose which subjected her to public criticism. The first controversy arose in January 2004 and involved the theft of funds by a high school cafeteria employee and the response of the School Administration to that occurrence. Subsequently, Defendant Yanosko made statements at a public School Board meeting which reflected that Plaintiff, High School Principal Daniel Cecchini, and Eric Brandenburg, the Business Manager, mishandled the investigation and covered up the extent of the theft. Plaintiff alleges that Defendant Yanosko pursued a private investigation of this issue in hopes of finding something to constitute grounds for removal of Plaintiff as Superintendent.

A second controversy arose when a high school teacher was accused of making inappropriate sexual remarks to students. Members of the School Board, as well as school parents, were critical of the manner in which Plaintiff and Principal Daniel Cecchini handled the investigation. Subsequently, the School Board hired an outside attorney to conduct an investigation into the manner in which the Administration handled the allegations against the teacher.

In addition to creating a hostile work environment, Plaintiff alleges that on a number of occasions Defendant Yanosko sexually harassed her. For example, Plaintiff alleges that at school football and basketball games, he would sit uncomfortably close to her and rub his legs against her. He would also compliment her on how she was dressed in a tone of voice which

Plaintiff found offensive.   As a result of these encounters, Plaintiff began to sell tickets rather than sit next to Defendant Yanosko at the events.

During her employment as Superintendent, Plaintiff did not make any written complaints to any individuals or entities regarding her treatment by Defendant Yanosko. However, Plaintiff alleges that on multiple occasions she made verbal complaints to a number of people, including various school board members, the School District business manager, and the School District Solicitor, Lee Price.  However, a "conspiracy of acquiescence" existed which tolerated Defendant Yanosko's alleged inappropriate behavior.

Both Plaintiff and Principal Daniel Cecchini submitted letters of resignation from the School District on April 21, 2004, which resignations were effective on June 30, 2004. Plaintiff contends that she was forced to resign and that her termination was due to the fact that the "conditions of employment had become so hostile that Plaintiff could no longer continue." Pl's Br. at 7.  Plaintiff contends that she would not have retired but for the harassment / hostile work environment created by the conduct of Defendant Yanosko and the "conspiracy of acquiescence."

Plaintiff was replaced as Superintendent by a man, Wayde Killmeyer.  He was hired at a starting salary ($88,000) which was $6,000 more than Plaintiff's annual salary of approximately $81,995.00 when she resigned.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

With respect to summary judgment in discrimination cases, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).  The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory or retaliatory purpose.  *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 525 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

DISCUSSION

A.     <u>Claims Under 42 U.S.C. § 1983</u>

Section 1983 of title 42 of the United States Code does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). A *prima facie* case under § 1983 requires a plaintiff to demonstrate: (i) that the alleged wrongful conduct was committed by a person acting under color of state law; and (ii) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Both elements must be present to sustain a § 1983 claim.

To sustain a § 1983 claim against a municipality, a plaintiff must also show that the action in question was taken pursuant to a governmental policy. *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978). A single action by a municipal official, however, may constitute a "policy" if he had final authority to pursue a course of action regarding the matter at issue and deliberately chose among available alternatives to do so. *Pembaur v. Cincinnati,* 475 U.S. 469, 481-84 (1986); *Bello v. Walker,* 840 F.2d 1124, 1129-30 n.4 (3d Cir.), *cert. denied,* 488 U.S. 868 (1988).

The Court of Appeals for the Third Circuit has instructed as follows:

> An individual's conduct implements official policy or practice
> under several types of circumstances, including when (1) the individual
> acted pursuant to formal government policy or a standard operating
> procedure long accepted within the government entity, (2) the individual

9

> himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown,* 445 F.3d 225, 245 (3d Cir. 2006).

Defendants argue that Plaintiff cannot as a matter of law prove the required elements of a Section 1983 claim because Defendant Yanosko "is not an individual with final policy-making authority. He is one member of a nine-member Board, and even during the year that he acted as Board President, he was not vested with any greater policy-making authority than he had when he was only a member of the Board." Defs' Br. at 4.

However, our appellate court has held that "[a] state employee may, under certain circumstances, wield considerable control over a subordinate whose work he regularly supervises, even if he does not hire, fire, or issue regular evaluations of her work." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997).

It is not contested that Defendant Yanosko did not have the sole authority to hire, fire, or make any employment decision with regard to Plaintiff. However, Plaintiff argues that Defendant Yanosko had the ability to affect her work and his actions toward her created a hostile work environment. Defendant Yanosko, both as a School Board member, and especially as the Board president, "wielded sufficient authority to intimidate [Plaintiff] and make her fear reprisal if she disobeyed his order, directives, or refused his unwelcome sexual advances. " Pl's Br. at 12.

Our appellate court has instructed that "[t]here is simply no plausible justification for distinguishing between abuse of state authority by one who holds the formal title of supervisor, on the one hand, and abuse of state authority by one who bears no such title but whose regular duties nonetheless include a virtually identical supervisory role, on the other." *Id.*

After deliberate consideration, the Court finds and rules that Defendant Yanosko was acting in a respondeat superior capacity and, therefore, Plaintiff has met the threshold from which municipal liability may be established.

Next, the Court must determine whether Plaintiff has demonstrated a *prima facie* case of hostile work environment. Plaintiff claims that "Defendants . . . intentionally created a hostile work environment and intentionally harassed her and discriminated against Plaintiff because of her sex /gender . . . ." In order to state a claim premised on a hostile work environment, the plaintiff must demonstrate the following: "(1) [she] suffered intentional discrimination because of [her] sex;[3] (2) the discrimination was [severe or pervasive];[4] (3) the discrimination detrimentally affected. . . plaintiff; (4) the discrimination would detrimentally

---

[3]     The United States Court of Appeals for the Third Circuit has noted that "the intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course. A more fact intensive analysis will be necessary where the actions are not sexual by their very nature." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 n.3 (3d Cir. 1990).

[4]     While the *Andrews* court stated that the discrimination in question must have been "pervasive and regular," the United States Supreme Court has employed a "severe or pervasive" standard. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001), which the Third Circuit recently adopted, noting that "[t]he difference is meaningful, and the Supreme Court's word controls." *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* -- U.S. ---, 126 S.Ct. 2405 (2006).

affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Andrews,* 895 F.2d at 1482 (footnote omitted) (citations omitted). A *prima facie* showing, therefore, contains both a subjective standard (that plaintiff was in fact affected) and an objective standard (that a reasonable, similarly situated woman would have been affected). *See id.* at 1483. In determining whether a hostile environment exists, the totality of the circumstances is considered. *Id.* at 1486.

After a review of the record, the Court finds that genuine issues of material fact exist as to whether Defendant Yanosko subjected Plaintiff to unwanted sexual advances and created a hostile work environment because she was female. For example, the record evidence reflects that Defendant Yanosko sat extremely close to Plaintiff and rubbed his legs against her at sporting events; he stated that she could not understand building construction / renovation issues because she was a woman; and that a man should have been hired instead of her. Defendant Yanosko would become physically agitated in his confrontations with Plaintiff, including tearing up her plans, pounding on the table, and becoming verbally abusive.

Eric Brandenburg, the Business Manager for the School District, testified in his deposition to the following, *inter alia*:

• At board meetings, Defendant Yanosko, "when he was the board president especially, . . . [would] either shush [Plaintiff] or he would put the old hand out . . . ." Depo. at 11.

• Defendant Yanosko would make Plaintiff fax the proposed agenda to him "three, four, five, six times. He would be belligerent about stuff. I've never seen anything like that." Depo. at 10.

• "I would say he was -- what he was trying to do from my perspective was at all costs "How can I get this lady out of here." I mean, I think that was his goal. His was "This woman (sic) got to go. . . [Plaintiff] never had a good point to him." Depo. at 14.

• Plaintiff told Mr. Brandenburg that Defendant Yanosko did not like her because she was a woman. In his deposition, Mr. Brandenburg stated, "To be honest with you, I couldn't disagree with her because I really believed that - - I just think he didn't respect women." Depo. at 28

• "[I]f Mr. Yanosko had anything to do with it, they would hire a man because Mr. Yanosko - - and I believe this - - that he just doesn't respect a woman. . . . [W]hen there were two women in a position of power, [Defendant Yanosko] basically came down on both of them terribly. The other one was Mrs. Birdsall. He didn't want her to be the athletic director either. . . ." Depo. at 63.

During his deposition, Mr. Brandenburg was asked if the School Board knew how Defendant Yanosko was treating the Plaintiff. Mr. Brandenburg replied: "There's no doubt. When I look back, I think, if anything was most upsetting, they just let him be a bully. . . . [W]hen someone is getting abused, it's time you can't let that happen. As a school board, you cannot let that happen. I feel bad because they did. They let it happen and it made the whole place a circus." Depo. at 28.

The Court finds that a reasonable finder of fact could conclude that Plaintiff was subjected to sex /gender harassment and a hostile work environment based on her gender. Accordingly, summary judgment will be denied on Plaintiff's § 1983 claims.

B.     Claims Under 42 U.S.C. § 1985(3)

In Count II of her Complaint, Plaintiff alleges a cause of action under 42 U.S.C. § 1985(3), which prohibits conspiracies predicated on "racial, or perhaps otherwise class-based, invidiously discriminatory animus."[5] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In order to survive summary judgment on this claim, Plaintiff must demonstrate "(1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997); *Ridgewood Board of Education v. N.E.*, 172 F.3d 238, 253-54 (3d Cir. 1999).

Defendants assert that Plaintiff has not established sufficient proof that a conspiracy to deprive her of constitutional rights because of her gender existed. The Court agrees.

Under § 1985(3), there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin,* 403 U.S. at 102. Such animus "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 (1993).

---

[5]     In relevant part, 42 U.S.C. § 1985(3) "provides for recovery of damages against 'two or more persons in any State [who] conspire . . . for the purpose of depriving . . . any person of having and exercising any right or privilege of a citizen of the United States.' " *Stephens v. Longo*, 122 F.3d 171, 184 (3d Cir. 1997) (quoting 42 U.S.C. § 1985(3)).

While there is no question that Plaintiff, as a woman, is a member of a protected class, the Court finds and rules that she has not presented sufficient evidence that Defendants acted in concert with each other with a discriminatory intent. Plaintiff argues that such an animus can be inferred solely from their alleged "conspiracy of acquiescence." However, "a conspiracy claim based upon § 1985(3) requires a <u>clear showing</u> of invidious, purposeful and intentional discrimination between classes or individuals." *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) (emphasis added). Plaintiff has failed to make a showing that there was a conspiracy to deprive her of her civil rights, or that an act was done to further such a conspiracy.

The summary judgment record reflects that Defendant Yanosko and two or three other Board members publicly criticized her, while others supported her. The record is void that Board members, other than Defendant Yanosko, had any gender animus toward Plaintiff, or, for that matter, purposefully set out to discriminate against her because of her gender.

Further, the mere association or alignment of interests of these particular Board members with Defendant Yanosko does not allow for that conclusion. "The First Amendment requires more than evidence of association to impose liability for conspiracy and, in fact, prohibits liability on that basis alone." *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 163 (3d Cir. 2001). "For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 919 (1982)*.* Plaintiff has presented absolutely no evidence that Board members other than Defendant Yanosko had the specific intent to discriminate against her because of her gender.

As this paucity of evidence "could not lead a trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citations omitted). The Defendants' summary judgment motion will, therefore, be granted and Plaintiff's claim under § 1986 will be dismissed.

3.        Claims Under 42 U.S.C. § 1986

Section 1986 holds liable any individual who has "[k]nowledge of any of the wrongs conspired to be done, and mentioned in the preceding section [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so." 42 U.S.C. § 1986.

The statute of limitations applicable to a Section 1986 claim is one year measured from the date of the accrual of the cause of action. Plaintiff submitted her resignation to the School Board on April 24, 2004. Plaintiff's last day of employment at the School District was June 30, 2004. Either of these dates is more than one year from the date of the filing of Plaintiff's Complaint, September 27, 2005. Therefore, Plaintiff's § 1986 claims are barred by the applicable statute of limitations.

Furthermore, in the absence of a valid claim for a Section 1985(3) violation, there can be no claim for failure to prevent a civil rights conspiracy violation under Section 1986. *See Bieros v. Nicola*, 839 F. Supp. 332 (E.D. Pa.1993).

For these reasons, Defendants' motion for summary judgment will be granted and Plaintiff's claim under § 1986 will be dismissed.

D.      *Claim of Defamation against Defendant Yanosko*

i.  <u>Prima Facie Case</u>

In a defamation case, the plaintiff must prove: (i) the defamatory character of the communication; (ii) its publication by the defendant; (iii) its application to the plaintiff; (iv) the understanding by the recipient of its defamatory meaning; (v) the understanding by the recipient of it as intended to be applied to the plaintiff; (vi) special harm resulting to the plaintiff from its publication; and (vii) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. Ann. § 8343(a); *Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 71 (Pa. Super. Ct. 2005). When the issue is properly raised, the defendant has the burden of proving: "(1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; [and/or] (3) the character of the subject matter of defamatory comment as of public concern." 42 Pa. Cons. Stat. Ann. § 8343(b); *Weber,* 878 A.2d at 71-72.

"In an action for defamation, the plaintiff has the burden of proving . . . [t]he defamatory character of the communication." 42 Pa. Cons. Stat. Ann. § 8343(a). "It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Tucker v. Phila. Daily News*, 848 A.2d 113, 123-24 (Pa. 2004) (*quoting Thomas Merton Ctr. v. Rockwell Int'l Corp*., 442 A.2d 213, 215-16 (Pa. 1981)).

In the present controversy, Plaintiff alleges that "[o]n various occasions from approximately 2003 to the present, with absolutely no reasonable belief, knowledge, merit or privilege, Defendant [Michael Yanosko] with malice, published false factual accusations

through the School District, the Board of Education and the community stating publicly in

Board meetings and elsewhere that Plaintiff was having a sexual affair with Daniel Cecchini,

another administrator, accused Plaintiff of theft of School District funds, deception, conspiracy

and covering up the crimes, and declared that Plaintiff was completely incompetent, and knew

nothing about education, the profession she devoted her life to and had built a 33 year career."

Complaint, ¶ 42.

     For the purpose of this Memorandum Opinion only, the Court finds that Plaintiff has

sufficiently alleged each of the elements of defamation and has, therefore, made a *prima facie*

showing thereof.

     ii.   <u>Defendant's Affirmative Defenses</u>

     1. Absolute Privilege for High Public Officials

     The Pennsylvania Supreme Court has explained the doctrine of absolute

privilege for high public officials as follows:

> As its name implies, is unlimited and exempts a high public official from
> all civil suits for damages arising out of defamatory statements and even
> from statements or actions motivated by malice, provided the statements
> are made or the actions are taken in the course of the official's duties or
> powers and within the scope of his authority, or as it is sometimes
> expressed, within his jurisdiction.

*Matson v. Margiotti*, 88 A.2d 892 (Pa. 1952). *See also Lindner v. Mollan,* 677 A.2d 1194, 1197

(Pa. 1996) (noting that cases on absolute privilege "have sought to strike a balance between the

public's interest in the unfettered and full discussion of public business among our government

officials while recognizing the undeniable right of the individual to be protected in his or her

reputation.")

In the case *sub judice*, there is no question that Defendant Yanosko, as a school board director, qualifies as a "high public official." *Matta v. Burton*, 721 A.2d 1164 (Pa. Commw. 1998). Therefore, the Court must examine whether the alleged defamatory statements were made within the scope of Defendant Yanosko's official duties and authority.

Plaintiff alleges that Defendant Yanosko defamed her when he accused her of possible theft or misuse of school district funds, conspiracy and deception, and professional incompetence. (Complaint ¶¶ 42-44). It is not disputed that there was a public controversy which involved the School District's cafeteria funds and that there was a large public outcry with regard to the Administration's handling of the matter. It is also not disputed that while Defendant Yanosko accused Plaintiff and Daniel Cecchini of covering up the extent of the theft, there was never any allegation made by Defendant Yanosko that Plaintiff herself had stolen any funds.

The matters involved Plaintiff's responsibilities as the District Superintendent for fiscal management, management of employees, her competency, as well as potential conflicts of interest in her role as superintendent. Clearly, these matters are within the course of duties and scope of authority inherent in the School Board and the individual members that compose that body.

Therefore, since Defendant Yanosko's remarks were made within the scope of his authority as a member and one-time president of the School Board, he is immune from this defamation suit under the doctrine of absolute privilege afforded high public officials.

2.      Statute of Limitations

Assuming *arguendo* that Defendant Yanosko's comments concerning an alleged sexual affair between Plaintiff and Daniel Cecchini are not protected by immunity, any such statements are time barred.  Plaintiff testified in her deposition that she believed Defendant Yanosko had made statements regarding her alleged affair with Daniel Cecchini at public meetings held June 23, 2003 and August 13, 2003.

The statute of limitations applicable to a defamation action in Pennsylvania is one year.  42 Pa. C.S.A. § 5523.   For this reason, the Court finds that Defendant Yanosko's statements regarding an alleged sexual relationship between Plaintiff and Daniel Cecchini are time barred and Defendants' motion for summary judgment will be granted.


CONCLUSION

Viewing the facts in the light most favorable to Plaintiff, the Court finds that (i) Plaintiff has demonstrated a *prima facie* case of sex/gender harassment and hostile work environment under Section 1983; (ii) Plaintiff has failed to establish a *prima facie* case of conspiracy under Section 1985, (iii) Plaintiff has failed to establish a *prima facie* case of aiding a conspiracy  under Section 1986, and (iv) Plaintiff has failed to establish a *prima facie* case of defamation.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PAULETTE GRAHAM,               )
               Plaintiff,   )
                     )
        v.               )     02: 05cv1344
                     )
THE AVELLA AREA SCHOOL DISTRICT,  )
THE AVELLA AREA SCHOOL DISTRICT    )
 BOARD OF EDUCATION, & MICHAEL    )
YANOSKO,                          )
             Defendants.   )

**ORDER OF COURT**

AND NOW, this 24th day of January, 2008, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

(i)     Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's

claims of sex/ gender harassment and hostile work environment pursuant to 42 U.S.C. § 1983;

(ii)     Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's

claims pursuant to 42 U.S.C. § 1985(3);

(iiv)     Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's

claims pursuant to 42 U.S.C. § 1986; and

(iv)     Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's

state law claim of defamation against Defendant Michael  Yanosko.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Lois E. Glanby, Esquire
        Email: attorneyglanby@aol.com

Alfred C. Maiello, Esquire
Maiello, Brungo & Maiello
Email: acm@mbm-law.net

R. Russell Lucas, Jr., Esquire
Maiello, Brungo & Maiello
Email: rrl@mbm-law.net